## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

NIEVES GONZALEZ,
    Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,
    Defendant.

CIV. NO. 18-1907 (MDM)

Nieves González ("Plaintiff") seeks judicial review of the denial of his application for social security benefits by the Commissioner of Social Security ("the Commissioner"). Pending before the Court is Plaintiff's motion requesting that the Commissioner's decision finding that he is not disabled, and thus denying his disability insurance benefits, be vacated and the case be remanded for a new determination on whether Plaintiff was disabled since his alleged onset date. (Docket No. 16). After careful consideration of the parties' briefs and the administrative record, and for the reasons set forth below, the Commissioner's decision is **AFFIRMED**.

### I.    Standard of Review

Judicial review of Social Security administrative determinations is authorized by 42 U.S.C. § 405(g). The court's function is limited to deciding whether the Commissioner's decision is supported by substantial evidence and based on a correct legal standard. *Id*. After reviewing the pleadings and record transcript ("Tr."), the court has the power to enter "a judgment affirming, modifying, or reversing the decision of the Commissioner." 42 U.S.C. § 405(g). The court's "review is limited to determining whether the administrative law judge ("ALJ") deployed the proper legal standards and found facts upon the proper quantum of evidence." *Manso–Pizarro v. Secretary,* 76 F.3d 15, 16 (1st Cir. 1996).

The Commissioner's findings of fact are conclusive when supported by substantial evidence, but not when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts. *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999). "Substantial evidence means 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Visiting Nurse Ass'n Gregoria Auffant, Inc. v. Thompson*, 447 F.3d 68, 72 (1st Cir. 2006) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Substantial evidence, in turn, is evidence that "a reasonable mind . . . could accept . . . as adequate to support [a] conclusion." *Purdy v. Berryhill*, 887 F.3d 7, 13 (1st Cir. 2018) (quoting *Rodriguez v. Sec'y of HHS*, 647 F.2d 218, 222 (1st Cir. 1981)).

Where the Court finds that there is substantial evidence supporting the Commissioner's decision, it must be upheld, even if there is also substantial evidence for the Plaintiff's position. 20 C.F.R. § 404.1546(c). The court must therefore "uphold the [Commissioner's] findings . . . if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion." *Rodríguez v. Sec'y of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981) (per curiam). In other words, the court "must affirm the [Commissioner's] resolution, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence." *Rodríguez Pagan v. Sec'y of Health & Human Servs.*, 819 F.2d 1, 3 (1st Cir. 1987).

In reviewing the record for substantial evidence, courts must keep in mind that "(i)ssues of credibility and the drawing of permissible inference[s] from evidentiary facts are the prime responsibility of the [Commissioner]," and "the resolution of conflicts in the evidence and the determination of the ultimate question of disability is for [him], not for the doctors or for the courts." *Id.* (internal quotation marks omitted). *Purdy*, 887 F.3d at 13. Courts will not second-guess the Commissioner's resolution of conflicting evidence. *See Irlanda Ortiz v. Sec'y of Health and Human Serv.*, 955 F.2d 765, 769 (1st Cir. 1991).

## II.    Background

Plaintiff was born on November 9, 1970. As of the alleged onset date, January 16, 2009, he was 38 years old. As of the date last insured, September 30, 2014, he was 44 years old. He is currently 49 years old. He has a high school education, does not speak English and his past relevant work history consists of human resources clerk and production assembler.

Plaintiff's last employment was with the Federal Emergency Management Agency ("FEMA"), where he worked at a call center taking and registering calls. He worked with FEMA for approximately eight years until the call center was closed in 2009.

Plaintiff applied for Title II social security disability benefits on October 17, 2012 claiming that he had been disabled since January 16, 2009. His claim was denied at the initial level of administrative review on May 31, 2013. His claim was then reviewed anew and given reconsideration after Plaintiff's duly filed request, but it was denied again on February 25, 2014.  Thereafter, Plaintiff timely filed a written request for a hearing on April 24, 2014. On June 6, 2016, a hearing was held by way of video-teleconference. The Plaintiff appeared during the hearing and was represented by attorney Iliana Delgado. Plaintiff testified with the assistance of a Spanish language interpreter. Ms. Jacqueline R. Bethell, M.S., C.R.C., an impartial vocational expert provided by the Social Security Administration ("SSA"), provided expert testimony. After the hearing, Administrative Law Judge ("ALJ") Kim Nagle left the record open so that Plaintiff could submit additional evidentiary records, which he did on August 15 and August 23, 2016. On September 28, 2016, the ALJ issued a decision denying Plaintiff's application for disability insurance benefits, finding that he was not disabled. On June 26, 2018, the Appeals Council denied Plaintiff's request for review, thus making the ALJ's decision the final decision of the Commissioner.

On November 28, 2018, Plaintiff filed the above-captioned complaint for review of the Commissioner's decision to deny him social security benefits. (Docket No. 1). On May 30, 2019, Plaintiff filed a memorandum of law (Docket No. 16) in support of

his allegation that the ALJ's decision was not based on substantial evidence as required by 42 U.S.C. § 405(g) and that the Commissioner erred in determining that he was not entitled to disability insurance benefits. In response, the Commissioner filed a motion requesting that the Court affirm the decision of the Commissioner. (Docket No. 21).

### III.    Definition of "disability"

The key question before the ALJ was whether the Plaintiff was disabled within the meaning of the Social Security Act ("SSA"). *See* 42 U.S.C. § 423(a)(1). Congress defined "disabled," as relevant here, as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment or combination of impairments which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" *Id.* § 423(d)(1)(A). In determining whether a Plaintiff is disabled, all the evidence in the record must be considered. 20 C.F.R. § 404.1520(a)(3).

The SSA has promulgated a regulation that structures the inquiry that an ALJ must undertake to evaluate whether a Plaintiff is "disabled" under the statute. The regulation sets forth a five-step inquiry:

> (i)    At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled . . . .
>
> (ii)   At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment . . . we will find that you are not disabled . . . .
>
> (iii)  At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one [set forth in an appended list] and meets the duration requirement, we will find that you are disabled . . . .
>
> (iv)   At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled . . . .

>    (v)    At the fifth and last step, we consider our assessment of
>    your residual functional capacity and your age, education, and
>    work experience to see if you can make an adjustment to other
>    work. If you can make an adjustment to other work, we will find
>    that you are not disabled. If you cannot make an adjustment to
>    other work, we will find that you are disabled.

20 C.F.R. §§ 404.1520(a)(4)(i)–(v). *See Coskery v. Berryhill*, 892 F.3d 1, 2–3 (1st Cir. 2018).

    Here, the burden is on the Plaintiff to prove that he is disabled within the meaning of the SSA. *Bowen v. Yuckert*, 482 U.S. 137, 146–47 n. 5 (1987). At steps one through four, the Plaintiff has the burden of proving that he cannot return to his former employment because of the alleged disability. *Santiago v. Sec'y of Health & Human Servs.,* 944 F.2d 1, 5 (1st Cir. 1991). Once the Plaintiff has demonstrated a severe impairment that prohibits him to return to his previous employment, the Commissioner has the burden under step five to prove the existence of other jobs in the national economy that the Plaintiff can perform. *Ortiz v. Sec'y of Health & Human Servs.,* 890 F.2d 520, 524 (1st Cir. 1989); *Hernandez v. Comm'r of Soc. Sec.*, 989 F. Supp. 2d 202, 205 (D.P.R. 2013). Additionally, to be eligible for disability benefits, the Plaintiff must demonstrate that his disability existed prior to the expiration of his insured status, or his date last insured. *Cruz Rivera v. Secretary of Health & Human Services*, 818 F.2d 96, 97 (1st Cir. 1986).

## IV.    The ALJ's decision

    On September 28, 2016, the ALJ issued a decision finding that Plaintiff was not disabled from January 16, 2009, his alleged onset date, through the date last insured of September 30, 2014. In determining whether Plaintiff was disabled within the pertinent period, the ALJ analyzed his claim using the five-step sequential evaluation for adjudication of disability claims.

    At step one, the ALJ found that Plaintiff did not engage in substantial gainful activity during the period from his alleged onset date, January 16, 2014, through his date last insured of September 30, 2014. (Tr. at 33).

At step two, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease (referenced as "low back pain"), arthritis and anxiety (depression). The ALJ also determined that the medical records show that Plaintiff has been measured at a height of five feet, four inches, and a then-current weight of approximately 220 pounds, which corresponds to a body mass index (BMI) of 37.8. Accordingly, the ALJ found that the requirements of SSR 02-1p for the establishment of obesity as a medically determinative impairment had been satisfied. As explained in the ALJ's final report, the evidence (including the Plaintiff's hearing testimony) substantiates that as of the date last insured, these impairments, in combination, had imposed at least more than minimal limitations on the Plaintiff's ability to perform basic work-related activities for at least twelve consecutive months, thus meeting the definition of "severe" under the regulations (SSR 85-28), and permitting his claim to proceed through to step three of the sequential evaluation process. (Tr. at 34).

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ then determined, upon consideration of the entire record, that Plaintiff had the residual functional capacity ("RFC") to perform light work, as defined in 20 C.F.R. 404.1567(b), except that such work (a) must not require more than occasional crawling or climbing of ladders, ropes, or scaffolds, or more than frequent crouching, kneeling, stooping, balancing (i.e., navigating narrow, slippery, or erratically moving surfaces), or climbing of ramps or stairs; (b) must not require more than occasional fingering (i.e., fine manipulation) with the right upper extremity, or more than frequent fingering (i.e., fine manipulation) with the left upper extremity, or more than frequent handling (i.e., gross manipulation) with either upper extremity; (c) must consist of no more than simple and routine tasks; and (d) must not involve more than simple changes. (Tr. at 38).

At step four, to determine whether Plaintiff had the RFC to perform the requirements of his past relevant work, relying on the testimony and opinion of the vocational expert Jacqueline R. Bethell, the ALJ found that through the date last insured, Plaintiff was able to perform his past relevant work as a production assembler. Tr. 40-45.  Accordingly, because Plaintiff retained the capacity, despite his impairments, to perform past relevant work, he was declared "not disabled" within the meaning of the Social Security Act. (Tr. at 46).

At step five, given Plaintiff's RFC and other vocational characteristics (age, education, language, fluency, skills), and based on the testimony of vocational expert, Jacqueline R. Bethell, which was found to be credible, the ALJ determined that other work existed in significant numbers in the national economy that Plaintiff could perform, including (1) *housekeeper/cleaner*, which is considered unskilled work, with approximately 500 jobs in Plaintiff's region, and 115,200 jobs nationwide; (2) *sales attendant*, which is considered unskilled work, with approximately 1,800 jobs in Plaintiff's region, and 209,600 jobs nationwide; and (3) *office helper*, which is considered unskilled work, with approximately 1,000 jobs in Plaintiff's region, and 35,800 jobs nationwide.

Accordingly, the ALJ concluded that Plaintiff was not disabled, as defined by the SSA, at any time, from January 16, 2009, the alleged onset date, through September 30, 2014, the date last insured. (Tr. at 46-48).

## V.   Discussion

This case boils down to the Court's determination as to whether there is substantial evidence to support the ALJ's determination at steps four and five in the sequential evaluation process that, based on Plaintiff's RFC, age, education, work experience, language, fluency, and skills, 1) Plaintiff could perform the requirements of his past relevant work, and 2) there was work in the national economy that he could perform. If there is substantial evidence in the record, the ALJ's determination that Plaintiff is not disabled within the meaning of the SSA must be affirmed.

Though that is the underlying inquiry posed to the Court, Plaintiff claims that the ALJ erred with respect to three specific issues in finding that Plaintiff was not

disabled. First, he argues that the ALJ erred in determining his RFC because she did not take into account his multiple complaints of disabling pain. Second, Plaintiff claims that the ALJ erred in determining his RFC because she did not have an independent medical expert review the medical evidence in this case. Third, Plaintiff claims that the ALJ ignored the opinion of consultative examining physician Dr. Cases Mayoral regarding the Plaintiff's hand limitations by failing to include all of Plaintiff's impairments in the hypothetical questions she presented to the vocational expert. He therefore alleges that, as a result, the ALJ erred at step four of the sequential evaluative process in finding that the Plaintiff could perform his past relevant work as a production assembler, and at step five of the sequential evaluative process that he could perform the additional jobs of housekeeper/cleaner, sales attendant and office helper. Based on a review of the entire record, I disagree.

### A.   Plaintiff's contention that the ALJ failed to consider his multiple complaints of disabling pain in determining his RFC

The Social Security Act provides that the factual findings of the Secretary shall be conclusive if supported by "substantial evidence." 42 U.S.C. § 405(g). Furthermore, this Court "must uphold the Secretary's findings . . . if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion." *Rodriguez v. Secretary of Health and Human Services*, 647 F.2d 218, 222 (1st Cir. 1981). It is the responsibility of the Secretary to determine issues of credibility and to draw inferences from the record evidence. *Id.* In assessing the consistency of Plaintiff's statements with his symptoms, the ALJ must evaluate allegations together with the objective medical and other evidence. *See* 20 C.F.R. § 404.1529(c); SSR 16-3p. The ALJ should also consider the consistency of statements and available evidence, as well as factors such as the individual's treatment history, daily activities, and medications. *See* 20 C.F.R. § 404.1529(c)(4); SSR 16-3p. In the end, the resolution of conflicts in the evidence is for the Commissioner, not the courts. *Id.*

With respect to Plaintiff's contention that the ALJ did not give proper weight and emphasis to Plaintiff's complaints of disabling pain, the record is replete with instances where the ALJ acknowledged such complaints and either stated that she did not believe the Plaintiff or that the pronouncements of the Plaintiff were simply not in accord with the documentary evidence in the record or with Plaintiff's overall treatment history. For example, in discussing the Plaintiff's RFC, the ALJ said she felt constrained to note that,

> the Plaintiff has conceded on multiple occasions, including in his documentary submissions, that the direct cause of his ceasing work was not the effects of his impairments, but rather because he was involuntarily laid off by his employer. [Ex.5E] The Plaintiff has produced no evidence at all of any medical impairment as of his alleged onset date of January 16, 2009–that is simply the last date that he worked. However, this does not establish that the Plaintiff was unable, from a functional standpoint, to perform the duties of his position, and the lack of medical evidence of any impairment for years after his alleged onset date leads to the inescapable conclusion that the Plaintiff would have continued performing his work if he had been allowed to do so. Indeed, the clear implication of the Plaintiff's admissions is that he himself recognizes that he had the mental and physical capabilities to continue to perform the job.

(Tr. at 42.)

The ALJ further found that there was no evidence at all of impairment from the year 2009 to 2012 and that there were,

> a multitude of inconsistencies in the [Plaintiff's] statements and testimony. In particular, [she] noted that the [Plaintiff] professed to be[ing] *unable* to raise his right arm and hand during the administration of the oath at the hearing. However, later in the proceeding, when [she] asked about the alleged shoulder and neck pain, [Plaintiff] was easily able to bend his [elbow] and raise his hand up over his shoulder to point out the alleged location of his neck pain. (Emphasis added).

(Tr. at 42-43).

The ALJ continued by noting that:

> the substantial gaps in the [Plaintiff's] physical treatment
> history, which strongly suggest that he had not
> experienced anywhere near the continuous limitation from
> physical impairment symptoms that he portrays in his
> application and presentation. The [Plaintiff] neither
> received nor required any medical treatment of any kind
> from 2009 to 2012, and then also, despite alleged back pain
> and other physical limitations appurtenant thereto that he
> nevertheless contends have been persistent, he neither
> sought nor required any treatment for an entire year
> between November 2014 and November 2015. Since one
> would expect a truly disabled individual to follow through
> with the treatment necessary to control or alleviate one's
> disabling symptoms, his behavior suggests that his
> symptoms have not been as severe or as limiting as he
> alleges.

(Tr. at 43).

Then, in conclusion, the ALJ noted that:

> All of these inconsistencies have lessened the extent to
> which the evidence supports the (Plaintiff's) statement
> concerning the intensity, persistence, and limiting effects
> of his symptoms.

*Id.*

With respect to the Plaintiff's treatment regimen regarding his wrists and
hands, the ALJ opined that:

> For conditions that allegedly render a person completely
> unable to work, one would expect to see either more
> intensive treatment, especially treatment aimed at
> restoring the person's ability to work, or medical
> acknowledgment that restorative or curative treatment is
> not possible given the nature of the person's conditions. No
> such evidence is present in this case. The significant
> inconsistencies between the [Plaintiff's] subjective
> allegations and the rest of the evidence justify lessening
> weight given to the [Plaintiff's] statements concerning the

> intensity, persistence and limiting effects of his symptoms
> in determining the physical elements of his residual
> functional capacity.

(Tr. at 40).

In summary, based on all of the above, I find that the ALJ did not err in her RFC determination by allegedly failing to consider Plaintiff's subjective pain assessment. The record clearly shows that the ALJ did give proper consideration to Plaintiff's complaints of pain and discomfort. She simply gave such complaints little weight due to the complete lack of treatment history for Plaintiff's alleged pain, which conflicts with Plaintiff's characterization of the intensity of his pain, and Plaintiff's overall lack of credibility during the hearing regarding his level of pain. In sum, the ALJ reasonably found that Plaintiff's complaints of disabling pain were not consistent with the overall medical evidence of record. The ALJ therefore found that he could perform a limited range of light work. For these reasons, I find that Plaintiff's first cited error is without merit because the ALJ's RFC findings were based on substantial evidence.

**B.    Plaintiff's contention that the ALJ failed to consult an independent medical expert in determining Plaintiff's RFC**

Next, the Plaintiff claims that the ALJ erred by not consulting an independent medical expert in determining his RFC with respect to both Plaintiff's mental and physical limitations. He asserts that as a layperson, the ALJ "was not in a position to interpret raw medical data to conclude that Plaintiff suffered from exertional limitations," and that the ALJ "cited only to evidence favorable to the Commissioner." Docket No. 16 at 24-25.

RFC is an administrative assessment of a Plaintiff's maximum sustained ability to perform work activity. 20 C.F.R. § 404.1545; SSR 96-8p. In other words, it is the most a Plaintiff can do despite his impairment(s). 20 C.F.R. § 404.1545. The regulations establish and recognize that the ultimate responsibility for determining

a Plaintiff's RFC rests *solely* with the ALJ. 20 C.F.R. §§ 404.1527(e)(2), 404.1546; SSR 96-5p. (Emphasis added).

When measuring a Plaintiff's capabilities, "an expert's RFC evaluation is ordinarily essential unless the extent of functional loss, and its effect on job performance, would be apparent even to a lay person." *Swales v, Berryhill,* 245 F. Supp. 3d 290, 294 (D. Mass. 2017) (quoting *Santiago v. Sec'y of Health & Human Servs.,* 944 F.2d 1, 7 (1st Cir. 1991)) (per curiam). The reason for requiring an expert's RFC assessment is that generally, "an ALJ, as a lay person, is not qualified to interpret raw data in a medical record." *Id.* (quoting *Manso–Pizarro v. Sec'y of Health & Human Servs.,* 76 F.3d 15, 17 (1st Cir. 1996) (per curiam); *see also Gordils v. Sec'y of Health & Human Servs.,* 921 F.2d 327, 329 (1st Cir. 1990) (per curiam) ("[S]ince bare medical findings are unintelligible to a lay person in terms of residual functional capacity, the ALJ is not qualified to assess residual functional capacity based on a bare medical record."). *Swales,* 245 F. Supp. 3d. at 294. "This principle does not mean, however, that the [Commissioner] is precluded from rendering common-sense judgments about functional capacity based on medical findings, as long as the [Commissioner] does not overstep the bounds of a lay person's competence and render a medical judgment." *Gordils,* 921 F.2d at 329.

In this case, the Court notes that short of raising this issue in the most general of terms, Plaintiff's memorandum is utterly devoid of any discussion or analysis as to what "raw data" the ALJ interpreted beyond her lay capacity and understanding or what evidence "favorable to the Commissioner" the ALJ allegedly relied upon to reach her determination. *Id.* at 25. In essence, the Plaintiff limits his claim of the potential error by the ALJ to conclusory allegations and expects the Court to fill in the gaps and complete the argument for him.  As the First Circuit has made abundantly clear over the years,

> issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived . . . It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work . . . Judges are

> not expected to be mindreaders. Consequently, a litigant
> has an obligation 'to spell out its arguments squarely and
> distinctly,' or else forever hold its peace. (Internal
> quotations omitted).

*United States v. Zannino,* 895 F.2d 1, 17 (1st Cir.), *cert. denied,* 494 U.S. 1082 (1990) (citations omitted). *See also Ramos v. Roche Products, Inc.,* 936 F.2d 43, 51 (1st Cir.), *cert. denied,* 502 U.S. 941 (1991) (brief must contain a full statement of issues presented and accompanying arguments); *Continental Casualty Co. v. Canadian Universal Ins. Co.,* 924 F.2d 370, 375 (1st Cir. 1991) (mere mention, without supporting argumentation, that party seeks review of a district court's ruling insufficient to raise issue on appeal); *Brown v. Trustees of Boston University,* 891 F.2d 337, 353 (1st Cir. 1989). In this case, Plaintiff's failure to develop this argument leaves the Court with no alternative but to deem it waived.

In any event, notwithstanding Plaintiff's failure to develop this argument, a simple review of the record clearly contradicts Plaintiff's contention that the ALJ failed to consider the opinions of medical experts in reaching her determination that Plaintiff had an RFC to perform light work. More specifically, with respect to Plaintiff's physical functioning, on April 30, 2013, the Plaintiff was examined by consultative examining physician Dr. Hector J. Cases Mayoral. Dr. Cases Mayoral observed on a physical examination report that Plaintiff was well-developed, well-nourished, alert, cooperative, in no acute distress, well-oriented; could sit, stand, walk, lie down, and get up with difficulty; had a normal gait, good motor tone with no atrophy, normal reflexes, no deformities in the extremities, and only slightly decreased grip strength of 4/5 in both hands; no tenderness or deformities in the back, with moderate lumbosacral muscle spasms, and a bilateral positive straight leg raise (SLR) at 45 degrees. (Tr. at 35, 720-22). Dr. Cases Mayoral also completed a report of Plaintiff's hand functioning, checking off boxes that although Plaintiff had some pain and tenderness, he had no swelling, contractures, tremors, deformities or atrophy in either hands; had muscular strength of 4/5 bilaterally in both hands; and he could pinch, finger tap, button a shirt, pick up a coin, and write bilaterally. (Tr. at 723).

Therefore, Dr. Cases Mayoral recommended that Plaintiff had the physical capabilities to perform light work but should avoid moderate or strenuous activity, and avoid repetitive, sustained motion work with hands. (Tr. at 44-45, 721).

Then, on May 22, 2013, state agency medical consultant Dr. Rafael Queipo reviewed the entire record for Puerto Rico's disability determination agency, including the Plaintiff's treating medical providers, and concluded that the Plaintiff could occasionally lift and/or carry 20 pounds and frequently lift and/or carry 10 pounds; could stand, sit, and/or walk for six hours in an eight-hour workday; could frequently climb stairs, balance, kneel, and stoop; could occasionally climb ladders, crouch and crawl; was unlimited in feeling and reaching in any direction; but was limited in handling and fingering. (Tr. at 249-50). Dr. Queipo further concluded that Plaintiff was capable of light work with certain postural limitations, and no more than frequent fine or gross manipulation with either upper extremity. (Tr. at 44, 250-51).

Then, on February 25, 2014, Dr. Florentino Figueroa reviewed the entire record of Puerto Rico's disability determination agency and rendered the same opinion as Dr. Queipo. (*See* Tr. at 44, 269-71). The ALJ also noted that the record contained no further formal opinions from Plaintiff's own medical or non-medical sources that would refute or discredit the expert's determination that Plaintiff was capable of light work. (Tr. at 43).

Notably, the ALJ factored these findings into the RFC, as the RFC accounted for Plaintiff's ability to only occasionally climb ladders and crawl; frequently climb stairs, balance, kneel, and stoop; and frequently finger and handle with the left upper extremity, but no more than occasionally finger and frequently handle with the right upper extremity. (Tr. at 38).

The ALJ then made an overall assessment of the record and concluded that,

> [S]ince Dr. Queipo and Dr. Figueroa were familiar with the
> case record developed to those points in time and because,
> as highly qualified physicians who are also experts in
> Social Security disability evaluation, they have
> considerable understanding of the Social Security

> disability programs and their evidentiary requirements, their opinions deserve great weight. I therefore have adopted their assessments as a baseline in my determination of the [Plaintiff's] physical residual functional capacity. I also gave great weight to Dr. Cases's [sic] assessment, recognizing the value of an in-person examination and noting that it generally accords with the weight of the evidence.

(Tr. at 44).

With respect to Plaintiff's mental functioning, Barbara Hernández, Ph.D., reviewed the entire record for Puerto Rico's disability determination agency as of May 30, 2013, and assessed the Plaintiff as limited, essentially, to the same extent as delineated in the ALJ's formulation of the Plaintiff's RFC. Then, at the reconsideration level of administrative review, Adalisse Borges, Ph.D., reviewed the entire record of Puerto Rico's disability determination agency as of February 25, 2014, and affirmed Dr. Hernández' opinion as to Plaintiff's RFC. Thereupon, consistent with the ALJ's assessment of Plaintiff's physical functioning, the ALJ concluded that with respect to his mental functioning, Drs. Hernández and Borges were familiar with the case record developed up to that point and gave their opinions great weight because they were highly qualified psychologists who are also experts with knowledge and experience in Social Security disability programs and their evidentiary requirements. The ALJ adopted their assessments in her determination of Plaintiff's mental RFC and acknowledged that, on the whole, their medical opinions did not support that the Plaintiff's condition had worsened.

The Social Security regulations explicitly provide that while an ALJ will consider relevant opinions from medical sources to arrive at a corresponding RFC determination, ultimately, the responsibility to synthesize complex relevant medical data, and to arrive at a corresponding RFC determination, rests solely with the ALJ. *See* 20 C.F.R. §§ 404.1527(d)(2), 404.1545(a)(3), 404.1546(c). Moreover, while "an ALJ, as a lay person, is not qualified to interpret raw data in a medical record," (*see Manso-Pizarro*, 76 F.3d at 17), she is not "precluded from rendering common-sense

judgments about functional capacity based on medical findings . . . ." *Gordils*, 921 F.2d at 329.

As the above summary demonstrates, the ALJ clearly consulted with, and considered the advice of, multiple medical experts in concluding that the Plaintiff had an RFC to perform light work with certain postural and manipulative limitations. For that reason, the ALJ's RFC determination was based on substantial evidence and Plaintiff's second cited error by the ALJ is also without merit.

### C. Plaintiff's contention that the ALJ erred in finding Plaintiff not disabled at steps four and five of the sequential evaluation process.

Plaintiff next argues that the ALJ erred by ignoring the opinion of consultative examining physician Dr. Cases Mayoral regarding the Plaintiff's hand limitations by failing to include all of Plaintiff's impairments in the hypothetical questions she presented to the vocational expert. As such, Plaintiff claims that the ALJ erred in finding that he could perform his past relevant work as a production assembler and such other jobs as housekeeper/cleaner, sales attendant and office helper. I disagree.

This third issue is unique not only because it is a compound issue, but because it overlaps two steps in the sequential evaluative process. Accordingly, to the extent that this claim of error relates to the ALJ's decision at step four of the sequential evaluative process regarding Plaintiff's ability to perform his past relevant work as a production assembler, the burden is on the Plaintiff to prove that he cannot return to his former employment because of the alleged disability. *Santiago v. Sec'y of Health & Human Servs.,* 944 F.2d 1, 5 (1st Cir. 1991). Likewise, to the extent that this claim of error relates to step five of the sequential evaluative process, the burden is on the Commissioner to prove the existence of other jobs in the national economy that the Plaintiff can perform.

1.      **Plaintiff's contention that the ALJ ignored the opinion and recommendation of consultative examining physician Dr. Cases Mayoral**

Social Security Ruling 96–6p provides that because State agency medical and psychological consultants and other program physicians and psychologists are experts in the Social Security disability programs, the rules in 20 CFR 404.1527(f) and 416.927(f) require administrative law judges and the Appeals Council to consider their findings of fact about the nature and severity of an individual's impairment(s) as opinions of non-examining physicians and psychologists. Administrative law judges and the Appeals Council are not bound by findings made by State agency or other program physicians and psychologists, but they may not ignore these opinions and must explain the weight given to these opinions in their decisions. SSR 96-6p.

In appropriate circumstances, moreover, opinions from State agency medical and psychological consultants and other program physicians and psychologists may be entitled to greater weight than the opinions of treating or examining sources. *Id*. For example, the opinion of a State agency medical or psychological consultant or other program physician or psychologist may be entitled to greater weight than a treating source's medical opinion if the State agency medical or psychological consultant's opinion is based on a review of a complete case record that includes a medical report from a specialist in the individual's particular impairment which provides more detailed and comprehensive information than what was available to the individual's treating source. *Id*.

In this case, contrary to Plaintiff's contention, the ALJ did not ignore the opinion and recommendations of examining physician Dr. Cases Mayoral. On the contrary, the record shows that the ALJ gave some parts of his opinion and recommendations great weight. Among his recommendations were that:

1.  Plaintiff initially needs a lumbosacral MRI to rule out a lumber HNP.
2.  Plaintiff also needs EMG/NCV of the upper extremities to establish or rule [out] cervical radiculopathy and or carpal tunnel syndrome.
3.  Plaintiff needs stronger medications since the ones he is currently using do not alleviate the pain.

4. Patient should avoid moderate or strenuous activity.

5. Patient should avoid repetitive motion work with hands on a sustained manner.

In her final decision, the ALJ specifically recognized Dr. Cases Mayoral's recommendations in paragraphs 4 & 5 above as well as other parts of his medical opinions as described further below. Notwithstanding that, however, based on the overall medical evidence of record, the ALJ reasonably gave less weight to those opinions and recommendations.

For example, the ALJ recognized in her decision that X-rays, taken in August 2012, showed that Plaintiff suffered from osteoarthritis in both wrists, although the condition was more pronounced on the left side. (Tr. at 39). The ALJ also recognized that Dr. Cases Mayoral believed that Plaintiff was able to pinch, finger tap, button a shirt, pick up a coin, and write bilaterally, and he had muscular strength of 4/5 bilaterally in both hands. (Tr. at 723.) The ALJ then went on to note that from November 2013 to April 2014, the Plaintiff received physical therapy for bilateral hand numbness, but no improvement was achieved. Then, in January 2014, a nerve conduction velocity test confirmed the diagnosis of carpal tunnel syndrome.[1]

In June of 2014, more than a year after Dr. Cases Mayoral's examination of Plaintiff in April 2013, the Plaintiff underwent a surgical release procedure on his right (and dominant) wrist performed by Dr. Manuel Soares, which surgery was said to have produced "significant improvement." (Tr. at 40). Dr. Soares noted that the Plaintiff regained full range of motion in the right hand and wrist and the Plaintiff "acknowledged feeling well." (Tr. at 40). Then, in October 2014, the Plaintiff underwent physical therapy which produced even further improvement on the Plaintiff's right wrist. Nevertheless, the ALJ noted that the Plaintiff's right grip remained weaker than his left, which the ALJ considered in determining the manipulative elements of the Plaintiff's RFC. *Id.*

---

[1] The ALJ considered Plaintiff's carpal tunnel syndrome but noted that the evidence did not establish that his condition was so severe as to cause the inability to perform fine and gross movements effectively. (Tr. at 36).

With respect to the Plaintiff's left wrist and hand, the ALJ noted that there was less evidence of impairment than his right. *Id.* The ALJ noted that the Plaintiff was supposed to undergo a left-side carpal tunnel release surgery in January 2015, but the record contains "no evidence of treatment of any kind in the ensuing 18 months." *Id.* Indeed, the ALJ noted that the only thing in the record is that in June 2016 the Plaintiff was referred for further evaluation. *Id.*

In addition, regarding Plaintiff's physical capabilities, the ALJ explained in her decision that she entrusted Dr. Rafael Quiepo with reviewing the entire record of Puerto Rico's disability determination agency as of May 22, 2013 to validate and consider the treating physician's conclusions. She then appropriately incorporated and considered Dr. Quiepo's expert review where he concluded that the Plaintiff was capable of, but restricted to, "light exertional level of work, with attendant postural limitations and no more than frequent fine or gross manipulation with either upper extremity." (Tr. at 44). The ALJ also correctly relied on pertinent expert medical opinion at the reconsideration level when she had Dr. Florentino Figueroa review the entire record of the Puerto Rico disability determination agency as of February 25, 2014 before reaching her determination. Dr. Figueroa rendered the same opinion as Dr. Quiepo, which the ALJ relied on in her decision. And, the ALJ reasonably explained her rationale for giving such opinions due weight.

Complying with her statutory obligations, the ALJ gave Plaintiff "all benefit of doubt" and determined that Plaintiff had the physical capacity to perform light work, but with the manipulative restrictions delineated in her decision. In reaching her conclusion, the ALJ specifically addressed and incorporated Dr. Cases Mayoral's recommendation regarding repetitive motion work with his hands in light of, and as applied by, the expert advice of the two State agency medical consultants because of their extensive experience in Social Security disability evaluations. The Court notes, moreover, that the ALJ clearly balanced the opinions of consultative examining physician, Dr. Cases Mayoral, against the opinions of the reviewing experts, Drs. Quiepo and Figueroa, and other pertinent medical evidence, and, based on the totality of the evidence in the record, decided to give valuable credence to the opinions of the

latter two. On the whole, the ALJ's determination, which reasonably conforms the opinions of treating physician Dr. Cases Mayoral with those of reviewing experts Drs. Quiepo and Figueroa, was an adequate exercise of her general responsibility to resolve conflicts in the evidence, and of her recognized analytical function and discretionary capacity. *Purdy*, 887 F.3d at 13.[2]

In the end, notwithstanding Dr. Cases Mayoral's recommendation that Plaintiff avoid repetitive motion work with his hands, the record provides substantial evidence to support the ALJ's conclusion that the condition of his wrists and hands was not as bad as that described by Dr. Cases Mayoral in his April 2013 report. The ALJ opined with respect to the condition of Plaintiff's wrists and hands that,

> for conditions that allegedly render a person completely unable to work, one would expect to see either more intensive treatment, especially treatment aimed at restoring the person's ability to work, or medical acknowledgement that restorative or curative treatment is not possible given the nature of the person's conditions. No such evidence is present in this case. The significant inconsistencies between the [Plaintiff's] subjective allegations and the rest of the evidence justify lessening the weight given to the claimant's statements concerning the intensity, persistence, and limiting effects of his symptoms in determining the physical elements of his residual functional capacity. The evidence does not support a finding that the [Plaintiff] is as restricted as he contends or to a greater degree than I have delineated. While I have ultimately determined (after a review of the opinion evidence, discussed further within) that he does have very significant restrictions, the type of work the [Plaintiff] had performed in the recent past, as well as myriad [sic] other jobs existing in significant numbers in the national

---

[2] Social Security Ruling 96–6p recognizes that, as members of the teams that make determinations of disability at the initial and reconsideration levels of the administrative review process (except in disability hearings), State agency medical consultants consider the medical evidence in disability cases and make findings of fact on the medical issues, including, but not limited to, the existence and severity of an individual's impairment(s), the existence and severity of an individual's symptoms, whether the individual's impairment(s) meets or is equivalent in severity to the requirements for any impairment listed in 20 CFR part 404, subpart P, appendix 1 (the Listing of Impairments), and the individual's RFC. The administrative law judges may reasonable rely on those findings of fact in reaching their determinations.

> economy, cold accommodate these restrictions and the
> others I have outlined.

(Tr. at 40).

Based on the foregoing, the ALJ did not err in considering the opinions of two State agency medical consultants alongside the findings of the consultative examining physician, and other relevant medical evidence of record, to reach a determination regarding Plaintiff's RFC and capacity to work. Here, substantial evidence supports the ALJ's determination that the Plaintiff's RFC allows him to perform light work with specific restrictions, namely, perform no more than occasional fingering (i.e., fine manipulation) with the right upper extremity, or more than frequent fingering (i.e., fine manipulation) with the left upper extremity, or more than frequent handling (i.e., gross manipulation) with either upper extremity.

### 2.   Plaintiff's contention that the ALJ failed to incorporate important physical limitations into the hypothetical questions given to the vocational expert

Having determined that the ALJ did not ignore the recommendations of Dr. Cases Mayoral, the Court now turns to the assumptions given to the vocational expert during the hearing in order to determine the existence of other jobs in the national economy that the Plaintiff can perform. Here, Plaintiff claims that the ALJ erred in omitting important physical limitations in the assumptions used in the hypotheticals given to the vocational expert.

For a vocational expert's testimony to constitute substantial evidence, the vocational expert's opinion must be in response to a hypothetical that accurately describes the Plaintiff's impairments. *Arocho v. Secretary of Health & Human Servs.*, 670 F.2d 374, 375 (1st Cir. 1982); *Aho v. Commissioner of Soc. Sec. Admin.*, slip copy, No. 10–40052–FDS, 2011 WL 3511518, at *7 (D. Mass. Aug. 10, 2011) (Saylor, J.) (stating that in a hypothetical to a vocational expert, the question "must precisely describe a Plaintiff's impairments so that the vocational expert may accurately assess whether jobs exist for the Plaintiff." (quoting *Newton v. Chater*, 92 F.3d 688, 694–95

(8th Cir. 1996))); *Musto v. Halter*, 135 F. Supp. 2d 220, 232 (D. Mass.  2001) (remanding where hypothetical did not include a specific restriction from the residual functional capacity).

Although the ALJ's hypothetical question must describe the Plaintiff's impairments, the ALJ is not obliged to present impairments to the vocational expert that have been deemed not credible. *Agostini-Cisco v. Commissioner of Social Sec.*, 31 F. Supp. 3d 342, 349 (1st Cir. 2014). In general, a hypothetical is appropriate if the question accurately reflects the objective medical findings in the record. *E.g., Pérez v. Secretary of Health and Human Servs.*, 958 F.2d 445, 447 (1st Cir. 1991) (concluding there was substantial evidence when as part of the hypothetical, the hearing officer read aloud the medical expert's findings to the vocational expert); *Haidas v. Astrue*, No. 08–11274–MLW, 2010 WL 1408618, at *5 (D. Mass. Mar. 31, 2010) (Wolf, C.J.) (citing *Arocho*, 670 F.2d at 375) (concluding there was substantial evidence when the hypothetical included the specific medical diagnosis).

In this case, the Plaintiff appeared with his attorney on June 6, 2016, at a videoconference hearing held before the ALJ. During the hearing, the ALJ relied on the testimony of a vocational expert to assist her in translating medical evidence of Plaintiff's physical and mental limitations into functional terms. The opinion of the vocational expert was elicited primarily by way of presenting her with a series of hypothetical questions each of which assumed slightly different levels of exertional and non-exertional limitations based on evidence that corresponded to conclusions that were supported by the outputs of the medical authorities. *Arocho v. Sec'y of Health & Human Services*, 670 F.2d 374, 375 (1st Cir. 1982); *Olmeda v. Astrue*, 16 F. Supp. 3d at 32, 2014 WL 1477402 at *8.

In the first hypothetical, the ALJ asked the vocational expert to:

> assume a light exertional ability with the following postural abilities. Frequently climbing ramps or stairs. Occasionally climbing, [sic] ladders, ropes or scaffolds. Frequently balancing, stooping, kneeling, or crouching. No more than occasionally crawling. **Handling or fingering, that is gross and fine manipulation, with wither [sic] upper extremity would be limited to frequent.** The

individual is also restricted to simple and routine tasks
with simple changes. (Emphasis added).

Based on these assumptions, the vocational expert was asked whether the Plaintiff
could perform his past light unskilled job as a production assembler, to wit she said,
"Yes."

For the second hypothetical, the ALJ asked the vocational expert to assume all
the same limitations mentioned in the first hypothetical, "but for the dominant upper
extremity [ ] restrict that to occasional fine manipulation on the right upper
extremity." The vocational expert was then asked if that would still allow the Plaintiff
to perform his past job of production assembler, to wit she said, "Yes," **but with the
caveat that the Plaintiff "utilize [his] non-dominant (left) hand frequently."**
(Tr. at 69-70). (Emphasis added).

The ALJ then asked the vocational expert if there were examples of other jobs
in the national economy that Plaintiff could perform given those limitations. In
response, the vocational expert suggested that "based upon [ ] light work with the
occasional fine manipulation of the dominant hand, and with all the other limitations
from hypothetical one," Plaintiff could perform the jobs of housekeeper/cleaner, sales
attendant, and office helper. (Tr. at 70-71).

Then, for the third hypothetical, the ALJ asked the vocational expert to assume
that "due to pain, fatigue and anxiety the individual would require intermittent and
unpredictable breaks that would be expected to be off task for approximately 20% of
the work period." In response, the vocational expert opined that such assumptions
"would rule out work altogether." (Tr. at 71).

In this case, the Plaintiff takes issue with the purported failure of the ALJ to
ask certain questions related to his limitations. Given the non-adversarial nature of
these proceedings, this argument always gives the Court pause given a claimant's
right to a full and fair hearing. *See Agostini-Cisco v. Commissioner of Social Sec.*,
31 F. Supp. 3d 342 (2014) (citing *Bermontiz–Hernandez v. Commissioner of Social
Sec.*, 2013 WL 149640 at *10 (D.P.R. Jan. 14, 2013)). Here, however, the hypothetical
questions posed accurately described the Plaintiff's impairments because they were

based upon findings reflected in the treating, examining, and non-examining physicians' opinions, as well as the opinion of the vocational expert.[3] Accordingly, Plaintiff's claim of error is unavailing as there was nothing unfair nor improper with the hypotheticals posed in this case.

### 3.   Plaintiff's contention that the ALJ erred in finding that he could perform his past relevant work as a production assembler

Turning now to Plaintiff's contention that the ALJ erred in finding that based on the Plaintiff's RFC, as well as his age, education, work experience, language, fluency, and skills, he could perform his past relevant work as a production assembler.[4] Social Security regulations generally define "past relevant work" as that which was performed within the last 15 years. 20 C.F.R. § 404.1565(a). Furthermore, the work must have been a substantial gainful activity. *Id*. Here, Plaintiff takes particular exception to the fact that the Dictionary of Occupational Titles ("DOT") defines the tasks of a "production assembler" as including, *inter alia*, the performance of "repetitive" bench or line assembly operations to mass produce products. The

---

[3] Moreover, Plaintiff was well represented by counsel who appeared at the hearing and submitted evidence and argument on Plaintiff's behalf. (Tr. at 28 and 56-73).

[4] The Dictionary of Occupational Title describes the responsibilities and tasks of a production assembler as including:

> Perform[ing] repetitive bench or line assembly operations to mass-produce products, such as automobile or tractor radiators, blower wheels, refrigerators, or gas stoves: Plac[ing] parts in specified relationship to each other. Bolts, [sic] clips, screws, cements, or otherwise fasten[ing] parts together by hand or using hand tools or portable power tools. May tend machines, such as arbor presses or riveting machine, to perform force fitting or fastening operations on assembly line. May be assigned to different work-stations as production needs require. May work on-line where tasks vary as different model of same article moves along line. May be designated according to part or product produced.

(DOT code 706.687-010).

Plaintiff claims that the "repetitive" nature of the job of production assembler is precisely what Dr. Cases Mayoral recommended he avoid.

As the Court already explained above, the ALJ carefully considered the opinion and recommendations of Dr. Cases Mayoral, together with all the other evidence in the record, including the testimony of the Plaintiff himself, the medical opinions of Drs. Quiepo and Figueroa and the apparent dearth of treatment history to arrive at the conclusion that Plaintiff's hand limitations did not rise to the level of an absolute prohibition on performing all repetitive motion work with his fingers and hands. While reasonable minds may differ with the ALJ's ultimate conclusion, the Court finds that the record contains ample evidence, well in excess of the substantial evidence required, to support the ALJ's conclusion that the Plaintiff remains able to perform his past relevant work as a production assembler.

### 4.    Plaintiff's contention that the ALJ erred in finding that there is other work in the national economy that he could perform

With respect to the existence of other jobs in the national economy that the Plaintiff could perform, I similarly find that the record developed in this case contains abundant evidence to support the conclusions of the ALJ. In dealing generally with step five of the sequential evaluative process, if the claimant's limitations are exclusively exertional, then the Commissioner can meet his burden through the use of a chart contained in the Social Security regulations referred to as the Medical–Vocational Guidelines. 20 C.F.R. § 416.969; Medical–Vocational Guidelines, 20 C.F.R. pt. 404, subpt. P, App. 2, tables 1–3 (2001), cited in 20 C.F.R. § 416.969; *Heckler v. Campbell*, 461 U.S. 458 (1983); *See also, Sanchez-Ortiz v. Commissioner of Social Sec.*, 995 F. Supp. 2d 53, 62 (2014). "The Grid," as it is also known, consists of a matrix of the applicant's exertional capacity, age, education, and work experience. If the facts of the applicant's situation fit within the Grid's categories, the Grid "directs a conclusion as to whether the individual is or is not disabled." 20 C.F.R. pt. 404, subpt. P, App. 2, § 200.00(a), cited in 20 C.F.R. § 416.969; *See also, Sanchez-Ortiz*, 995 F. Supp. 2d at 62. That is to say that if the claimant's limitations are exclusively

exertional, the ALJ does not necessarily need vocational evidence to determine whether a claimant is disabled under the SSA. However, if the claimant has non-exertional limitations (such as mental, sensory, or skin impairments)[,] or a combination of exertional and non-exertional limitations that restrict [his] ability to perform jobs [he] would otherwise be capable of performing, then the Grid is only a "framework to guide [the] decision." 20 C.F.R. § 416.969a(d) (2001); *See also, Seavey v. Barnhart*, 276 F.3d 1, 11 (2001). In such a case, vocational evidence is required to establish whether there are jobs he could perform in the national economy.

In this case, the ALJ recognized that the Plaintiff suffered from a combination of both exertional and non-exertional limitations. She therefore correctly relied on the Grid, as well as the vocational evidence given by expert Judith Bethell, to determine the existence of jobs in the national economy for an individual with Plaintiff's age, education, work experience and RFC. As mentioned in the section above, the Court finds that the hypotheticals given to Ms. Bethell assumed slightly different levels of exertional and non-exertional limitations and were based on evidence that corresponded to conclusions supported by substantial medical evidence in the record. Accordingly, the Court finds that the ALJ followed the correct procedures at step five of the sequential evaluation process and met her burden to find that there do in fact exist other jobs in the national economy that a claimant with Plaintiff's limitations could perform. The Court further finds that such decision at step five of the sequential process is supported by substantial evidence in the record.

## VI.    Conclusion

In view of the above, I find that the ALJ properly evaluated and considered the evidence on record. I also find that the decision of the Commissioner is supported by substantial evidence. Accordingly, the Commissioner's decision is **AFFIRMED**.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 20th day of May 2020.


*s/Marshal D. Morgan*
MARSHAL D. MORGAN
United States Magistrate Judge